**PAIN PREVENTION LAB, INC., an Illinois corporation, Plaintiff,**

v.

**ELECTRONIC WAVEFORM LABS, INC., a California corporation, Defendant.**

No. 86 C 1297.

United States District Court, N.D. Illinois, E.D.

April 3, 1987.

Richard D. Harris, Richard E. Dick, Max Shaftal, Offices of Dick & Harris, Chicago, Ill., for plaintiff.

Bruce J. Altschuler, Brown & Altschuler, Beverly Hills, Cal., Barry J. Freeman, Edith F. Canter, Gottlieb & Schwartz, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Pain Prevention Lab, Inc. ("PPL") and defendant Electronic Waveform Labs, Inc. ("EWL") manufacture and sell competing electronic analgesic devices. PPL brought this action for damages, an injunction and declaratory judgment after joint venture negotiations with EWL broke down. Although EWL threatened to sue first, PPL won the race to the courthouse. In count I of PPL's complaint, PPL seeks a declaration that its product does not infringe any of EWL's intellectual property rights. In count II PPL seeks damages for breach of contract. Counts III through V consist of various unfair competition claims under Illinois statutes and common law, and count VI alleges violations of the false patent markings statute, 35 U.S.C. § 292(a).

EWL now moves to dismiss PPL's complaint for failure to comply with Federal Rule of Civil Procedure 8 and for failure to state a claim. EWL also moves to strike various allegations under Federal Rule of Civil Procedure 12(f), and to disqualify PPL's counsel.

## I. BACKGROUND

In addition to PPL's complaint, the parties have filed several exhibits and two lengthy affidavits. The following summary of the events leading up to this action is drawn from all of these sources. However, it does not constitute findings of fact, nor is it intended to resolve conflicting versions of the facts appearing in the affidavits.

EWL is a California corporation engaged in manufacturing and selling various transcutaneous electronic nerve stimulation ("TENS") devices. The devices relieve pain by transmitting an electrical signal through a patient's skin to stimulate nerves in the area under treatment. Because the effectiveness of these devices apparently depends in part on the waveform of the electrical signal, the signal generator is an important part of any TENS device. EWL's signal generator apparently was more effective than other TENS signal generators when it was developed, and EWL applied for a patent on it. The United States Patent and Trademark Office rejected that application, but EWL has submitted several continuation applications. See 35 U.S.C. § 120. Although several years have passed since the initial application, EWL's signal generator remains unpatented.

PPL is an Illinois corporation. Greg Halpern is its president. Beginning in late 1983, Halpern collaborated with Fred Pedersen, EWL's vice-president for research and development, to develop a dental analgesic device using the TENS technology. The device consisted of a dental appliance designed to plug into EWL's signal generator and transmit the electrical signal to a dental patient's oral tissue.

EWL and PPL contemplated a joint venture to market these devices. On June 13, 1984, they signed an interim agreement under which EWL would manufacture the signal generator and a dental control box, to be distributed by PPL along with its dental appliance. On August 2, 1984, representatives from PPL and EWL met to

discuss a long-term distributorship agreement.

Halpern had discussed the patentability of the device with Richard Harris, an attorney who regularly handled intellectual property work for PPL. Harris attended the August 2 meeting. The parties agreed that he would investigate the patentability of the device and prepare a patent application if one was feasible. The application was to name Halpern and Pedersen as co-inventors. Because the device apparently had been used in a non-confidential environment as early as January 1984, any application had to be filed before January 1985. *See* 35 U.S.C. § 102(b) (patent application must be filed within 12 months of public use). Both parties disclosed information to Harris at the meeting for use in connection with the patent work. Harris requested some additional information from EWL, and EWL agreed to provide it.

Although PPL and EWL tentatively agreed on certain terms, they did not execute a long-term agreement at the August 2 meeting. They did business under the interim agreement while negotiations on a long-term agreement continued. PPL purchased "a plurality" of EWL's signal generators and sold several of the devices to the public (complaint, ¶ 5).

Meanwhile, PPL directed Harris to proceed with the patent application. EWL submitted more information about their signal generator and the dental control box for Harris to use in preparing the application. In December 1984, as Harris was finishing up the patent application, he learned that negotiations over the long-term distributorship agreement were breaking down. The parties could not agree on a minimum purchase requirement for EWL's signal generators, or on ownership of any patent rights that might be obtained on the device. The business relationship between PPL and EWL rapidly deteriorated. Their interim distributorship agreement expired on December 31, 1984, and no long-term agreement was ever reached. Harris never submitted the patent application.

Both companies then developed competing dental analgesic devices using the TENS technology. PPL developed its own TENS signal generator and EWL apparently developed its own dental appliance. PPL allegedly returned the unsold signal generators that it had purchased from EWL, claiming that many of them were defective. Despite the return of the generators, EWL allegedly failed to refund any of PPL's money. After EWL discovered that PPL had developed its own TENS signal generator for use with the dental analgesic device it was selling, EWL threatened to sue PPL for "piracy and unfair competition." PPL responded by filing this lawsuit.

## II. PLEADING STANDARDS UNDER RULE 8

EWL argues that PPL's complaint should be dismissed for failure to comply with Fed.R.Civ.P. 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and Fed.R.Civ.P. 8(e)(1), which provides that "[e]ach averment of a pleading shall be simple, concise, and direct." A complaint may be dismissed for failure to comply with these rules under Fed.R.Civ.P. 41(b). *See, e.g., Nevijel v. North Coast Life Ins. Co.,* 651 F.2d 671, 673 (9th Cir.1981). However, as this court recently explained,

> [t]he purpose of Rule 8(a)(2) is to provide liberal pleading guidelines so that the merits of plaintiff's complaint will not be decided on technicalities [citation omitted]. At the same time, the rule provides sufficient structure so that defendants have notice of and can respond to charges against them.

*Morgan v. Kobrin Securities, Inc.,* 649 F.Supp. 1023, 1027 (N.D.Ill.1986), *citing Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). PPL's complaint consists of six counts. It is 28 pages long and includes one two-page exhibit. While it could be shorter, its length alone is not a problem, considering the nature of the claims it attempts to state. *See, e.g., Morgan,* 649 F.Supp. at 1026–27.

■ EWL attacks PPL's complaint as being poorly organized, argumentative, conclusory, overly detailed in some spots

and overly vague in others. Attached to EWL's memorandum is a 15-page appendix which reproduces virtually every substantive paragraph of PPL's complaint followed by EWL's objections to it. Some of EWL's objections are well taken, and the court agrees that the complaint is not a model pleading. Nevertheless, the complaint adequately apprises EWL of PPL's claims and its allegations are sufficient to enable the court to determine whether there is a claim stated for which relief can be granted.[1] Its defects are not so serious as to require dismissal under Rule 8.

### III. MOTION TO STRIKE

Alternatively, EWL moves to strike individual paragraphs of the complaint under Rule 12(f), which provides in relevant part that

> the court may order stricken from any pleading any redundant, immaterial, impertinent, or scandalous matter.

For example, PPL's central allegation in its declaratory judgment count (count I) is that

> Plaintiff is completely incapable of infringing upon any of Defendant's purported rights in and to said wave generator through Plaintiff's manufacture, use or sale of its own wave generator devices, for the reason that Defendant has not, and cannot obtain valid patent protection, (either utility or design) as well as is incapable of acquiring or enforcing any forms of trade secret, copyright or trade dress protection upon any facets of its TENS wave generator which Defendant currently produces. Further, Plaintiff's wave generator apparatus is hopelessly incapable of infringing on any purported forms of protection.

(Complaint, ¶ 10.) EWL contends that paragraph 10 should be stricken because it is "vague, conclusory and argumentative."

[2, 3] Even if it is all those things, those are not grounds for a motion to strike under Rule 12(f). Paragraph 10 may be somewhat inartfully stated and unnecessarily argumentative. However, it is not "redundant, immaterial, impertinent, or scandalous." Inartful pleading does not constitute a proper basis for a motion to strike. *See Croy v. Skinner*, 410 F.Supp. 117, 132 (N.D.Ga.1976). That allegations are vague and uninformative also is not grounds for a motion to strike although in extreme cases it may be grounds for a motion for a more definite statement under Rule 12(e). That allegations are conclusory is not grounds for a motion to strike either, although it may be grounds for dismissal for failure to state a claim under Rule 12(b)(6). Nor does mere verbosity justify striking allegations. For the most part, EWL's motion must be denied because it simply fails to advance any proper basis for its motion to strike. *See Harceg v. Brown*, 512 F.Supp. 788, 792 (N.D.Ill.1981).

One of EWL's arguments merits further attention. PPL filed its complaint after receiving a letter from EWL's counsel. The letter stated that EWL was considering legal action against PPL for "piracy and unfair competition," among other things. According to the letter,

> [o]n November 5, 1984 [PPL] sent [EWL] a letter, indicating that your receipt of [EWL's] blueprints and other specifications for its H-Wave machine was for use in obtaining a patent.
>
> [PPL] never even attempted to submit a patent application but instead copied [EWL's] machine and made a few cosmetic changes and began to manufacture a competing line of machines.

EWL blamed PPL and its president for failing to apply for a patent. It did not charge PPL with infringing an existing patent.

---

1. *See Kamen Soap Products Co. v. Struthers Wells Corp.*, 159 F.Supp. 706, 713 (S.D.N.Y.1958) ("While the complaint is prolix and contains a large amount of detail in an evidentiary matter, it clearly apprises defendants of the claims they are called up to meet. Motions to dismiss under the federal rules on such grounds as these are not favored."), *cited with approval in Little-* ton v. Berbling, 468 F.2d 389, 394 (7th Cir.1972) (reversing dismissal of a 21-page civil rights complaint), *rev'd on other grounds sub nom., O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Crest Auto Supplies, Inc. v. Ero Mfg. Co.*, 360 F.2d 896, 902 (7th Cir.1966) (affirming dismissal of an antitrust complaint that merely copied words from the statute).

In paragraph 11 of its complaint, PPL spends two pages alleging that EWL has not and cannot obtain a patent on its signal generator. Basically the paragraph alleges that EWL's product is unpatentable under 35 U.S.C. § 102. EWL appears to acknowledge that it does not have such a patent, so these allegations are arguably impertinent to the issues in this case.[2] Also, a declaratory judgment from this court on the patentability of EWL's signal generator might be inappropriate if EWL still has an application pending in the Patent and Trademark Office.

But while PPL's patent allegations may have been given more prominence than they deserve, the controversy between EWL and PPL stems at least in part from a patent application that was never filed (complaint, exh. A). Patent issues may well surface during this litigation. Thus it is impossible to conclude at this stage that PPL's patent allegations bear no possible relation to the controversy. *See Morrow v. South*, 540 F.Supp. 1104, 1111 (S.D.Ohio 1982). Finally, while immaterial allegations may be stricken,

> even immaterial allegations and likewise, verbose, conclusory, or evidentiary allegations need not be stricken unless their presence in the complaint prejudices the defendant.

*Federated Dept. Stores, Inc. v. Grinnell Corp.*, 287 F.Supp. 744, 747 (S.D.N.Y.1968); *see Magnavox Co. v. APF Electronics, Inc.*, 496 F.Supp. 29, 35 (N.D.Ill.1980). We are not persuaded that the allegations EWL has moved to strike are prejudicial. Because "any doubt as to the striking of matter in a pleading should be resolved in favor of the pleading," *Hanley v. Volpe*, 305 F.Supp. 977, 980 (E.D.Wis.1969), EWL's motion to strike is denied.

## IV. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

EWL next moves to dismiss the individual counts of PPL's complaint for failure to state a claim. EWL's arguments obviously must be rejected to the extent they assume that portions of the complaint would be stricken. However, EWL raises some issues that require further discussion.

In part, count I seeks a declaration of the non-existence and non-infringement of EWL's purported patent rights. EWL argues that count I must be dismissed because the complaint does not allege that EWL ever accused PPL of patent infringement. Although EWL makes this argument in maintaining that count I fails to state a claim, it would be more appropriately considered as raising justiciability problems. The validity or infringement of any patent on EWL's signal generator cannot be tested in the abstract unless and until such a patent exists. Thus EWL's rights under any prospective patent probably are not ripe for adjudication. Moreover, if EWL has not threatened to sue PPL for patent infringement, there might not be an "actual controversy" over EWL's patent rights and PPL would not have standing to seek a declaration regarding them. 28 U.S.C. § 2201; *see International Harvester Co. v. Deere & Co.*, 623 F.2d 1207 (7th Cir.1980).[3] Thus it is doubtful that this court will grant a declaratory judgment regarding EWL's "prospective patent or any of the prospective claims thereof of any alleged infringement" (complaint, ¶ E).

However, count I seeks more than a declaration of EWL's prospective patent rights. PPL also alleges that EWL "is incapable of acquiring or enforcing any forms of trade secret, copyright or trade dress protection upon any facets of its TENS wave generator ..." (complaint, ¶ 10). Although EWL did not precisely identify the intellectual property rights it intended to assert against PPL, its letter certainly could raise a reasonable apprehension of litigation regarding trade secret, copyright and trade dress protection. *See Harvester*, 623 F.2d at 1211–1215. And while EWL might not have accused PPL of

---

2. Such an acknowledgment, however, would seem to create problems for EWL in defending count VI, which alleges that EWL misrepresented that its product was patented, in violation of the false marking statute. 35 U.S.C. § 292(a).

3. This conclusion could very well have resulted in dismissal of much of PPL's complaint for lack of subject matter jurisdiction, except that diversity jurisdiction also appears to exist.

patent infringement, its charge of "piracy and unfair competition" may very well entitle PPL to seek a declaration that no patent exists now.[4] *See also Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). EWL's motion to dismiss count I is denied.

In count II, PPL seeks to recover damages from EWL for breach of contract. EWL argues that count II should be dismissed because PPL does not allege the existence of a contract. In response, PPL refers the court to the following passage from its complaint:

> Defendant ... during the year of 1984, approached Plaintiff towards consideration of a joint venture involving the distribution of Defendant's TENS wave generators under which Plaintiff fully developed and reduced to practice, plaintiff's remote dental analgesia apparatus....
>
> In association with said contemplated venture, Plaintiff purchased a plurality of Defendant's TENS wave generator apparatus with which it was to combine Plaintiff's ... dental analgesic apparatus for distribution in association with Defendant's TENS wave generators....
>
> ... Plaintiff forwarded remaining ones of Defendant's TENS wave generators apparata (many of which were defective) to defendant, towards defendant's refunding of monies paid on same from Defendant to Plaintiff....
>
> On several occasions Plaintiff has repeatedly requested the return of monies from defendant.... Defendant unlawfully retained possession of said monies paid for Defendant's TENS wave generator apparata, notwithstanding the fact that Plaintiff is not even in possession of such goods for which it paid, with Defendant continuing to refuse to return said monies of Plaintiff.

(Complaint, ¶¶ 14 through 17.) Without any further analysis or explanation, PPL concludes that EWL "cannot pretend that

it lacks notice of plaintiff's breach of contract claim and the grounds which support it" (plaintiff's mem. at 12–13).

■ The complaint is not nearly as clear as PPL apparently believes. The complaint itself contradicts any claim for breach of a joint venture agreement because the contemplated joint venture never materialized. No other express contracts are identified in the complaint. In *Murphy v. White Hen Pantry Co.,* 691 F.2d 350 (7th Cir.1982), the Seventh Circuit explained that the court's responsibility to infer the existence of a breach of contract claim is limited by the plaintiff's responsibility to give the defendant fair notice of his claims:

> It is axiomatic that even to arguably allege a claim based on breach of contract, the complaint must make some reference to the ... agreement between the parties.... The liberal reading policy in the rules prevents dismissal of a meritorious claim for purely formal or technical reasons. The district court is not required, however, to speculate over the nature of the plaintiff's claims.... The rules do not allow a plaintiff to abdicate the responsibility of alleging basic facts demonstrating his entitlement to relief. A plaintiff must give the district court some clue as to what his case is about.

691 F.2d at 353. *See, e.g., Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.,* 758 F.2d 203, 207 (7th Cir.1985) ("The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory."); *see also Tamura Inc. v. Sanyo Elect. Inc.,* 636 F.Supp. 1065, 1067 & n. 2 (N.D.Ill.1986). The only clue this court can find in count II is the allegation that PPL returned signal generators purchased from EWL because they were defective. That allegation states a claim for breach of warranty under Article 2 of the Uniform Commercial Code, so EWL's motion to dismiss count II must be denied. PPL may have other breach of contract

---

**4.** Count VI squarely presents this issue even if no declaratory judgment issues. *See* note 2

*supra.*

claims, but it will have to amend its complaint to assert them.

■ In count III PPL alleges that EWL violated Illinois common law and the Illinois version of the Uniform Deceptive Trade Practice Act (the Uniform Act), Ill. Rev.Stat. ch. 121–½. § 312, by misrepresenting that EWL's product was patented and approved by the United States Food and Drug Administration. Among other things, PPL alleges that it has lost sales because of these misrepresentations, and that its reputation and good will have been damaged. Section 312 of the Act provides in part that a person engages in a deceptive trade practice when, in the course of his business, he "represents that goods ... have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have...." Ill.Rev.Stat. ch. 121½, § 312(5). Section 313 of the Act provides:

> A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive is not required....

Ill.Rev.Stat. ch. 121½, § 313. PPL's allegations of misrepresentations concerning approval by the Food and Drug Administration and the existence of the United States patent, plainly state a claim for injunctive relief under these provisions. *See, e.g., Bonner v. Westbound Records, Inc.,* 49 Ill.App.3d 543, 547–49, 7 Ill.Dec. 409, 412–13, 364 N.E.2d 570, 573–74 (1st Dist. 1977) (affirming preliminary injunction in a "passing off" case).

Moreover, even if EWL's alleged conduct does not fall within § 312(5) for some technical reason, it would still violate the residual subsection of § 312 which prohibits "any other conduct which similarly creates a likelihood of confusion or misunderstanding." Ill.Rev.Stat. ch. 121–½, § 312(12). Whether their complaint states a claim under § 312(2) or some other subsection of § 312 is immaterial for purposes of a motion to dismiss. The subsections of § 312 overlap substantially, and while the court would strongly prefer plaintiff to specify which subsections were allegedly violated, failure to do so is not automatically

grounds for dismissal. *See, e.g., H.G. Gallimore, Inc. v. Abdula,* 652 F.Supp. 437, 450 (N.D.Ill.1987) (refusing to dismiss a RICO complaint on those grounds).

■ The only substantial issue concerning count III is whether it states a claim for damages as opposed to injunctive relief. No damage remedy is available under the Uniform Act. However, conduct prohibited by the Uniform Act also violates the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121–½, § 261 *et seq.* (the Consumer Fraud Act). *See* Ill.Rev.Stat. ch. 121–½, § 262. Damages are available under the Consumer Fraud Act. *See* Ill.Rev.Stat. ch. 121–½ § 270a; *American Wheel & Eng. Co., Inc. v. Dana Molded Products, Inc.,* 132 Ill. App.3d 205, 211, 87 Ill.Dec. 299, 303, 476 N.E.2d 1291, 1295 (1st Dist. 1985). The two acts are not co-extensive. For example, deceptive conduct is not actionable under the Consumer Fraud Act unless the conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. *See, e.g., Heritage Ins. Co. v. Bank of Cicero,* 629 F.Supp. 1412, 1419 (N.D.Ill.1986). However, businesses have standing to sue under the Consumer Fraud Act to redress competitive injury they suffer when other businesses deceive customers. *Newman-Green Inc. v. Alfonzo-Larrain,* 590 F.Supp. 1083, 1087 & n. 6 (N.D.Ill.1984). According to the complaint EWL made the alleged misrepresentations "in the marketplace and to actual and/or prospective customers". Count III states a claim for damages under the Consumer Fraud Act.

Because count III states a claim on statutory grounds, it is unnecessary to decide now whether it states any claims under Illinois common law. However, we note that on the facts alleged PPL's only common law unfair trade claim would be for false advertising. That has always been a very limited tort. *See Restatement (First) of Torts)* § 761 (1934); *Smith-Victor Corp. v. Sylvania Electric Products, Inc.,* 242 F.Supp. 302, 309 (N.D.Ill.1965). Even if Illinois courts would recognize the tort, which is far from certain, it probably would

add nothing to PPL's claim here. The Uniform Act and the Consumer Fraud Act do not preempt a common law tort of false advertising, but the statutes are so broad that the tort probably would be superfluous.

PPL alleges in count IV that EWL tortiously interfered with its contractual relations, *see, e.g., Martin v. Federal Life Ins. Co.,* 109 Ill.App.3d 596, 607, 65 Ill.Dec. 143, 151–152, 440 N.E.2d 998, 1006–07 (1st Dist. 1982), and tortiously interfered with its prospective business opportunities. *See, e.g., Belden Corp. v. Internorth, Inc.,* 90 Ill. App.3d 547, 552, 45 Ill.Dec. 765, 413 N.E.2d 98 (1st Dist.1980). Without citing a single case, EWL argues that count IV must be dismissed because its allegations are insufficiently detailed. The court disagrees. PPL does not have to plead evidence and its allegations in this count are more than sufficient to notify EWL of its claims.

■ Count V alleges disparagement claims arising under Illinois common law and under the Deceptive Trade Practices Act. In short, PPL alleges that EWL "knowingly and intentionally [made] false statements to one or more ... actual or potential dental analgesia equipment customers, to the effect, and contrary to fact, that Plaintiff's products were somehow unsatisfactorily made, unsafe, ineffective and/or poorly designed and/or that Plaintiff would not be able to perform in accordance with prior assurances of promised delivery schedules, and/or other critical service-related concerns of said customers" (complaint, ¶ 38). In paragraph 40, PPL alleges that it has lost and continues to lose profits due to lost sales resulting from these statements. Accepting these allegations as true, count V states a claim under the Uniform Act. Ill.Rev.Stat. ch. 121½, § 312(8). Like count III, it also states a claim under the Consumer Fraud Act.

EWL argues that to state a claim for disparagement a plaintiff must plead the substance and context of the disparaging statements. *See Oak Distributing Co. v. Miller Brewing Co.,* 370 F.Supp. 889, 898–99 (E.D.Mich.1973) (dismissing disparagement claims brought under the Sherman Act, 15 U.S.C. § 1). Assuming that is a correct statement of the rule, PPL has

complied with it. Nor do the other cases cited by EWL support dismissal of PPL's complaint. *Sylvania Electric* contains an illuminating discussion of disparagement, 242 F.Supp. at 307–08, but it was decided on a motion for summary judgment, not on a motion to dismiss. *Bose Corp. v. Consumers Union of United States, Inc.,* 57 F.R.D. 528 (D.Mass.1973), *Testing Systems, Inc. v. Magnaflux Corp.,* 251 F.Supp. 286 (E.D.Pa.1966), and *Erick Bowman Remedy Co., Inc. v. Jensen Salsbery Laboratories, Inc.,* 17 F.2d 255 (8th Cir.1926), discuss the need to allege special damages in a common law disparagement action. *See* Fed.R.Civ.P. 9(g) ("When items of special damages are claimed, they shall be specifically stated."). It is not at all clear that PPL needs to plead special damages in support of its statutory claims, nor is it clear that the special damages requirement applies to PPL's common law claim. *See, e.g., Hollymatic Corp. v. Holly Systems, Inc.,* 620 F.Supp. 1366, 1371 (N.D.Ill.1985) (questioning the continuing viability of the special damages rule). The parties have not briefed this issue and we decline to dismiss count V based on any deficiencies in pleading special damages. *See also Action Repair, Inc. v. American Broadcasting Cos.,* 776 F.2d 143, 150 (7th Cir.1985) (reversing district court's dismissal of a libel *per quod* action, where plaintiff could amend its complaint to allege "some actual pecuniary loss"); *Continental Nut Co. v. Robert L. Berner Co.,* 345 F.2d 395, 397 (7th Cir.1965) (rejecting the rigid rule for pleading special damages announced in *Erick* ).

■ EWL's last argument for dismissing count V is that it fails to comply with Rule 9(b), which provides in part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity." But PPL's complaint does not aver fraud or mistake, so Rule 9(b) does not apply. EWL counters that because commercial disparagement involves misrepresentation, it is sufficiently similar to fraud to implicate Rule 9(b). The court disagrees. One of the justifications underlying Rule 9(b) is that in a fraud case a defendant personally

or vicariously makes misrepresentations to the plaintiff, so the plaintiff at least should be able to describe those misrepresentations in the complaint. *See e.g., Lincoln Nat'l Bank v. Lampe,* 414 F.Supp. 1270, 1279 (N.D.Ill.1976). In a disparagement case the defendant makes misrepresentations to third parties and the plaintiff may be in no position to allege those statements with particularity. In *Holly Systems,* general allegations that the defendant made misrepresentations to the plaintiff's customers concerning the poor quality and adverse effect of the plaintiff's products were sufficient. *See Holly Systems,* 620 F.Supp. at 1371 (upholding a disparagement claim even though it did not allege "when, where, or by what means the alleged disparaging comments were communicated," nor "by whom or to whom the comments were made, or, indeed what was said"). Rule 9(b) does not apply and count V easily complies with Rule 8.[5]

### V. MOTION TO DISQUALIFY

EWL moves to disqualify PPL's attorneys for violating Canons 4, 5 and 9 of the American Bar Association Model Code of Professional Responsibility. PPL is represented in this litigation by the law firm of Dick and Harris. Richard Harris is a partner in that law firm and is principal attorney of record. EWL claims that Harris was representing them in preparing the patent application that was to cover the device that was developed by Halpern and Pedersen. According to EWL, their motion must be granted because that representation was "substantially related" to Harris' adverse representation in this action. EWL also claims that Harris must be disqualified because he may be called as a witness and because his continued representation of PPL creates an appearance of impropriety.

### A. Canon 5

■■■■■ This court thoroughly reviewed the principles governing attorney disquali-

fication in *Hughes v. Paine, Webber, Jackson & Curtis, Inc.,* 565 F.Supp. 663, 666–69 (N.D.Ill.1983), and that discussion need not be repeated here. As a threshold matter, an attorney/client relationship must exist before an attorney becomes subject to the obligations of Canon 4.[6] It is undisputed that there was never any formal attorney/client relationship between Harris and EWL. EWL never contracted with Harris for the performance of legal services, nor did EWL pay Harris any legal fees. Rather, EWL contends that its dealings with Harris created an implied attorney/client relationship. To establish an implied attorney/client relationship, a party must show (1) that it submitted confidential information to a lawyer, and (2) that it did so with the reasonable belief that the lawyer was acting as the party's attorney. *DCA Foods Industry, Inc. v. Tasty Foods, Inc.,* 626 F.Supp. 54, 59–60 (W.D.Wis.1985); *see Westinghouse Electric Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311 (7th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978).

Although the parties offer conflicting characterizations of the dealings between Harris and EWL, the following facts are undisputed. Harris' first contact with EWL was at a meeting in PPL's offices on August 2, 1984. Harris attended the meeting at PPL's request. He was introduced to EWL's representatives as a patent attorney. At the meeting representatives from EWL and PPL discussed the possibility of a long-term distribution agreement for a jointly developed dental analgesic product. Harris discussed the possibility of applying for a patent on the product. The application was to name Greg Halpern from PPL and Fred Pedersen of EWL as co-inventors. PPL was to pay for the patent proceedings, including the application.

PPL's general counsel, Jay Fetman, prepared a draft distribution agreement. The agreement was presented to EWL either at the August 2 meeting or shortly thereafter.

---

5. EWL's only argument for dismissing count VI, which alleges violations of 35 U.S.C. § 292(a) (false patent markings) depends on its motion to strike. Since that motion was denied, there is no basis for dismissing count VI.

6. "A lawyer should preserve the confidences and secrets of a client." Model Code of Professional Responsibility Canon 4 (1980).

That agreement provided for EWL to assign any patent rights it acquired in the product to PPL. However, the agreement was never executed.

Harris began preparing the patent application. He requested and received certain information from EWL, including schematics of EWL's TENS signal generator. Harris communicated with EWL directly and through PPL from August 1984 to December 1984 concerning the application.

### 1. Submission of Confidential Information

█ The parties disagree over whether the information Harris received from EWL was confidential. That information included:

(1) oral disclosures at the August 2 meeting regarding the jointly developed product;

(2) a publicly disseminated brochure describing EWL's TENS products;

(3) part of an application for a patent on EWL's TENS wave generator, which included a description of the TENS technology and circuit diagrams for EWL's wave generator;

(4) specifications, including a circuit diagram, for a "control box" for the jointly developed product.

EWL argues that these disclosures are confidential because any information a client gives to an attorney in the course of the attorney/client relationship is presumed to be confidential. *See, e.g., Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1267 (7th Cir.1983); *Schiessle v. Stephens*, 717 F.2d 417, 420 n. 2 (7th Cir.1983). However that presumption does not attach until an attorney/client relationship is established. To apply the presumption in determining whether an implied attorney/client relationship exists would assume the conclusion.

Ordinarily, information is confidential if it is held in secret and disclosed to a limited number of individuals for limited purposes. *Smith v. Dravo Corp.*, 203 F.2d 369 (7th Cir.1953), a leading case on trade secrets, is instructive on this point. It is also factually similar to this case. There the plaintiff disclosed patent applications, blueprints and customer information to the defendant

during negotiations for the purchase of the plaintiff's shipping container business. The negotiations were unsuccessful. Later, the defendant designed and manufactured a competing product and the plaintiff sued. In reversing judgment for the defendant, the Seventh Circuit explained that

almost any knowledge or information used in the conduct of one's business may be held by its possessor in secret.... Of course, ... the knowledge cannot be placed in the public domain and still be retained as a "secret". ... That which has become public property cannot be recalled to privacy. However, this does not mean that the product must reach the stature of invention.... All that is required is that the information or knowledge represent in some considerable degree the independent efforts of the claimants.

203 F.2d at 373 (citations omitted). Except for EWL's publicly-disseminated brochure, the disclosures in this case fall within this definition.

PPL appears to argue that the information it received from EWL concerning the wave generator was not confidential because the device was readily reverse-engineerable and similar products were on the market. In *Smith*, the Seventh Circuit rejected a similar contention, stating that

the mere fact that such lawful acquisition is available does not mean that [the defendant] may, through a breach of confidence, gain the information in usable form and escape the efforts of inspection and analysis.

203 F.2d at 375. PPL also appears to argue that EWL acknowledged the disclosures were not confidential. EWL withheld certain information from PPL; according to PPL, EWL only disclosed material it regarded as non-confidential. That analysis is implausible. As *Smith v. Dravo Corp.* illustrates, information does not become non-confidential simply because it is communicated in a business deal. That EWL disclosed certain information to Harris and PPL while withholding other information is of little significance. It is also insignificant that certain disclosures were

made without an express confidentiality agreement. *See, e.g., Smith*, 203 F.2d at 376–77 (promise of trust implied from the relationship of the party).

For the purposes of this motion, we need not decide whether or not PPL misappropriated any information from EWL and we express no view on that point now. However, the materials before this court strongly suggest that at least some of the information Harris received from EWL was confidential.

### 2. Reasonable Belief of Representation

Even assuming for the purposes of this motion that Harris received confidential information from EWL, EWL still must show that it reasonably believed Harris was acting as its attorney when it gave him the information. In support of its disqualification motion, EWL filed an affidavit from its president, Ed Heeney, stating that he believed Harris was preparing the patent application on EWL's behalf. The only fact supporting that belief is that Fred Pedersen, an officer of EWL, was to be named as a co-inventor on the application. Nothing shows that Pedersen had assigned or would assign his patent rights to EWL, but that seems to be a reasonable assumption.

▮▮▮ Nevertheless, we think it was unreasonable for EWL to believe that Harris was acting as its attorney solely on the basis of his work in preparing the patent application. An attorney/client relationship does not arise where one consults an attorney in a capacity other than as an attorney. *Kerr-McGee*, 580 F.2d at 1320. Communicating technical information to an attorney primarily to enable the attorney to prepare a patent application does not in itself call for the attorney to render any legal advice. *See Ashland Oil Inc. v. Delta Oil Products Corp.*, 209 U.S.P.Q. 151, 152–53 (E.D.Wis.1979); *Jack Winter, Inc. v. Koratron Co., Inc.*, 54 F.R.D. 44, 47 (N.D.Cal.1971) (both holding that no attorney/client privilege attached to such information). Nothing suggests that EWL ever independently sought any legal advice from

Harris, that EWL exercised any control over Harris' activity, or that EWL ever paid Harris for his work. EWL's contact with Harris was initiated by PPL and EWL sent much of the information it disclosed directly to PPL, who then forwarded it to Harris. Moreover, EWL apparently was prosecuting its own patent application on its signal generator alone and had retained a different patent attorney. Under the circumstances it was unreasonable for EWL to believe it had an attorney/client relationship existed. *See also Beghin-Say v. Rasmussen*, 212 U.S.P.Q. 614 (Commissioner of Patents and Trademarks 1980) (no attorney/client relationship between inventor's attorney and inventor's assignee, even though the attorney prosecuted the patent application after it had been assigned). Therefore Canon 4 does not apply, and Harris cannot be disqualified on that basis.

### B. Canon 5

EWL contends that Harris should be disqualified under Canon 5[7] because he may be called as a witness. EWL's factual assertions on this point are largely speculative. For example, EWL claims that Harris' testimony "may well be crucial to one side or the other," because

> Harris may very well have the most information and knowledge regarding which company had what technical know-how at what times. Harris may even prove to have knowledge regarding how PPL came to develop and market the dental unit shortly after Harris received the information in question from EWL. This information could be the key to determining whether EWL "stole" ideas from PPL, or vice versa.

▮▮▮ EWL also claims that Harris will be a crucial witness to the events that occurred at the August 2 meeting, although at the same time it attacks the credibility of Harris' affidavit because Harris left the meeting early. Further, EWL hints that Harris may be named as a party in this lawsuit (he is not a party now).

---

**7.** "A lawyer should exercise independent professional judgment on behalf of a client." Model

Code of Professional Responsibility Canon 5 (1980).

None of these arguments bring Harris within DR 5–102(A), which applies only when "a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client". *See, e.g., Gould v. Lumonics Research, Ltd.,* 495 F.Supp. 294, 299 (N.D.Ill.1980). The phrase "ought to be called as a witness" is construed narrowly. *See, e.g. SMI Industries Canada, Ltd. v. Caelter Industries, Inc.,* 586 F.Supp. 808, 817 (N.D.N.Y. 1984). While there may be issues as to which Harris could testify, EWL's assertions are too speculative to permit the conclusion that he ought to testify. *See Lemelson v. Synergistics Research Corp.,* 504 F.Supp. 1164, 1169 (S.D.N.Y.1981). Moreover, whether Harris ought to be called as a witness on behalf of PPL depends on PPL's trial strategy. The issue is largely within PPL's control and it is very difficult to resolve in EWL's favor this far in advance of trial. *See May's Family Centers, Inc. v. Goodman's, Inc.,* 590 F.Supp. 1163, 1165 n. 7 (N.D.Ill.1984).

■ The facts here do fall within Disciplinary Rule 5–102(B), which applies when "a lawyer learns that it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client." However, that section would require disqualification only where "it is apparent that [the lawyer's] testimony is or may be prejudicial to his client." It is not at all apparent that Harris' testimony would have any prejudicial effect on PPL. Prejudice to parties other than the lawyer's present client is not covered by this rule. *See Lemelson,* 504 F.Supp. at 1169; *Gould,* 495 F.Supp. at 299. Canon 5 does not call for Harris to be disqualified.

### C. Canon 9

■ Finally, EWL argues that Harris must be disqualified under Canon 9, which provides that "[a] lawyer should avoid even the appearance of professional impropriety." While the court agrees with EWL that Canon 9 has a purpose independent of Canon's 4 and 5, that purpose would not be served by disqualification here. As the court in *Tasty Foods* stated

Canon 9 is not to be interpreted to "override the delicate balance created by Can-

on 4." ... When a lawyer has demonstrated that his or her conduct is within the bounds of Canon 4, the possible appearance of impropriety is "simply too weak and too slender a reed on which to rest a disqualification order ... particularly where the mere appearance of impropriety is far from clear.

626 F.Supp. at 59 (citations omitted). That statement applies with equal force here. Any appearance of impropriety resulting from Harris' conduct is far too weak to call for disqualification based on Canon 9 alone. EWL's motion to disqualify is denied.

### CONCLUSION

EWL's motions to dismiss, to strike and to disqualify are all denied.