UNIVERSITY OF WEST VIRGINIA BOARD OF TRUSTEES on Behalf of WEST VIRGINIA UNIVERSITY, Plaintiff,

v.

Kurt L. VANVOORHIES, Defendant.

No. Civ.A. 1:97CV144.

United States District Court, N.D. West Virginia.

Nov. 18, 1998.

Andrew G. Fusco, Morgantown, WV, David E. Tungate, Pittsburgh, PA, for plaintiff.

William A. Kolibash, Wheeling, WV, Kenneth A. Martin, Washington, D.C., for defendant.

*MEMORANDUM OPINION AND ORDER*

BROADWATER, District Judge.

## I. INTRODUCTION

On the 20th day of August 1998, the above-styled matter came before the Court for consideration of the defendant's motion to disqualify plaintiff's counsel (Document # 27). The parties appeared by their counsel of record and presented oral arguments in support of their respective memoranda of law. After considering the above, the Court is of the opinion that the defendant's motion to disqualify plaintiff's counsel should be **DENIED.**

## II. FACTS

The law firm of Eckert Seamans Cherin .& Mellott, L.L.C. ("Eckert Seamans") has represented West Virginia University ("WVU") with regard to intellectual property matters for at least fifteen years. This has included the prosecution of numerous United States patent applications for WVU in the United States Patent and Trademark Office ("PTO").

Dr. Kurt L. VanVoorhies ("Dr.VanVoorhies") and Dr. James E. Smith ("Dr.Smith") signed an Assignment dated February 5, 1993 ("Assignment") which, by its terms, assigns to WVU, *inter alia,* "the entire right, title and interest in and to said invention or inventions" as described in U.S. Patent Application Serial No. 07/992,970 ("Application '970"), as well as any continuation-in-part or foreign applications which may be filed upon said invention or inventions. The invention or inventions embodied in Application '970 were certain improvements to a toroidal antenna. These improvements are described in the Disclosure of Invention signed and submitted to WVU by Dr. Van-

Voorhies and Dr. Smith in November 1991. This disclosure indicates that the invention was conceived and developed while Dr. VanVoorhies and Dr. Smith were working on a project funded by the Defense Advanced Research Projects Agency.

The Assignment states that Dr. VanVoorhies and Dr. Smith will

communicate to said assignee [WVU], its representatives or agents or its successors and assigns, any facts relating to said invention or inventions including evidence for interference purposes or for other legal proceedings whenever requested [and will] generally do everything possible to aid said assignee, its successors or assigns and nominees to obtain and enforce proper patent protection for said invention or inventions in this or any foreign country.

WVU retained Eckert Seamans to prepare and prosecute Application '970 and U.S. Patent Application Serial No. 08/486,340 ("Application '340") on its behalf as the owner of the invention or inventions disclosed and claimed therein. Eckert Seamans invoiced WVU for legal services rendered in connection with the preparation and prosecution of Application '970 and Application '340. WVU paid Eckert Seamans for its legal services. Eckert Seamans acted at the direction of WVU in performing legal services related to the preparation and prosecution of Applications '970 and '340.

No retention agreement ever existed between Dr. VanVoorhies and Eckert Seamans. Eckert Seamans never invoiced Dr. VanVoorhies for legal services. Dr. VanVoorhies did not pay Eckert Seamans for any legal services. As well, Eckert Seamans denied that it ever represented Dr. VanVoorhies. The usual indicia of an attorney-client relationship, such as contracts or memoranda of representation, are not present in this case.

Dr. VanVoorhies claims that he was represented by Eckert Seamans during the time period of "on or about May 4, 1992 through February 15, 1995." He concedes that Eckert Seamans represented WVU during this time period, but further alleges that the law firm represented Dr. Smith. There is no claim by Dr. VanVoorhies that Eckert Seamans represented him after February 15,

1995. At no time between January 30, 1995 and May 13, 1998, when he filed the instant motion, did Dr. VanVoorhies ever raise a concern that Eckert Seamans had represented him and might therefore be in a position of conflict of interest.

Dr. VanVoorhies retained Lyman Lyon, Esquire, a patent lawyer, in March 1995. Mr. Lyon likewise did not assert that Eckert Seamans was in any way precluded from representing WVU in its ongoing dispute with Dr. VanVoorhies about his obligation to assign Application '340. Rather than asserting that Eckert Seamans had represented Dr. VanVoorhies, Mr. Lyon charged the firm with "ill founded posturing, demands and threats" and treated the firm as an adversary to Dr. VanVoorhies.

Dr. VanVoorhies acknowledged in a February 23, 1995 letter to Eckert Seamans that the firm did not represent him, or Dr. Smith. His words at that time were: "I realize that I am not your client, and that it is not your duty to look out for my rights ... In fact, Dr. Smith is also not your client, and I am certainly not challenging WVU's rights to the invention." (Plaintiff's Exhibit 13.) Dr. VanVoorhies communicated with Eckert Seamans with regard to Application '970 as required by the Assignment. During the course of his communications with Eckert Seamans, Dr. VanVoorhies became licensed before the PTO as a Patent Agent in October 1994. Therefore, he has much more knowledge of patent law than the average person. Further, Dr. VanVoorhies has not established the communication of any confidential information to Eckert Seamans. It appears that any information provided to Eckert Seamans was given pursuant to Dr. VanVoorhies' contractual obligation as required by the Assignment.

## III. DISCUSSION OF LAW

The party seeking disqualification of opposing counsel carries a heavy burden. Disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary." *DCA Food Ind., Inc. v. Tasty Foods, Inc.,* 626 F.Supp. 54, 58 (W.D.Wis.1985), quoting *Freeman v. Chicago*

*Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982).

"The relationship between inventor and his assignee's patent counsel who is appointed to prosecute the patent application must be considered in conjunction with the patent laws governing the acquisition and assignment of rights to inventions." *Sun Studs, Inc. v. Applied Theory Assoc., Inc.*, 772 F.2d 1557, 1568 (Fed.Cir.1985). *Sun Studs* provides the controlling law in determining whether counsel should be disqualified in this case and is therefore dispositive of the issue before the Court. Both parties have extensively briefed their understanding of the effect of the *Sun Studs* holding upon this motion. The Court finds that the communications between Eckert Seamans and Dr. VanVoorhies are indistinguishable from the communications between Sun Studs firm and the inventor in *Sun Studs*, where the Court found "no sound basis" to disqualify the firm. *Sun Studs,* 772 F.2d at 1569.

■ 37 C.F.R. § 1.41(a) requires that "[a] patent must be applied for in the name of the actual inventor or inventors." 35 U.S.C. § 111 also states that an "[a]pplication for patent shall be made, or authorized to be made, by the inventor, except as otherwise provided in this title, in writing to the Commissioner." "Even where the invention has been assigned to the company, the inventor must still be the applicant." *Sun Studs,* 772 F.2d at 1568. In this case, Dr. VanVoorhies and Dr. Smith are identified as the co-inventors and applicants on Application '970. Dr. VanVoorhies alone is identified as the inventor and applicant on Application '340, although Dr. VanVoorhies' refused to execute an Assignment of the invention or inventions disclosed and claimed in Application '340.

"The choice of attorneys, like the filing, is a decision by the assignee, not the inventor." *Sun Studs,* 772 F.2d at 1568. "Should the company later find it necessary to sue on the patent, it is to be expected that the company would choose its regular patent counsel for representation whom the inventor designated on its behalf." *Id.*

Dr. VanVoorhies contends that the identification of Eckert Seamans attorneys as "Attorney for Applicants" on filings with the U.S. Patent and Trademark Office is evidence that the law firm represented him, since he was one of the "Applicants" on Application '970. Such a designation has little significance in this context. The usual procedure is described in the *Sun Studs* opinion. "The PTO corresponds with the persons named in the original power of attorney even after an assignment is recorded unless the assignee otherwise requests. Thus, it is routine for an inventor to execute an application appointing the attorneys who prepared the application at the direction of the party to whom the application must be assigned and on whose behalf it will be prosecuted." *Sun Studs,* 772 F.2d at 1568, citing 37 C.F.R. § 1.33(a). As well, "[c]ommunicating technical information to an attorney primarily to enable the attorney to prepare a patent application does not in itself call for the attorney to render any legal advice." *Pain Prevention Lab, Inc. v. Electronic Waveform Labs,* 657 F.Supp. 1486, 1497 (N.D.Ill.1987).

Dr. VanVoorhies contends that Eckert Seamans is in a conflict of interest, as a substantial relationship allegedly exists between its current representation of WVU and its alleged prior representation of Dr. VanVoorhies. Before even undertaking the "substantial relationship" test, it is necessary to determine whether or not a prior attorney-client relationship ever existed between Eckert Seamans and Dr. VanVoorhies. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 836 F.2d 1332, 1336 (Fed.Cir.1988); *Beghin–Say v. Rasmussen,* 212 U.S.P.Q. 614, 616 (Com'r Pat. & Trademarks 1980).

Dr. VanVoorhies cites a number of cases which purportedly require the disqualification of plaintiff's counsel. These cases are inapposite for several reasons. The cases primarily relied upon by Dr. VanVoorhies in his principal brief all arose under circumstances very different from this one, as none of them address the role of patent counsel in the patent application process.[1] Dr. VanVoo-

---

1. *Coles v. Arizona Charlie's,* 973 F.Supp. 971 (D.Nev.1997) is an age discrimination case in which there was no dispute that the disqualified attorney had formerly represented Arizona Char-

rhies also cited several cases to the Court during oral arguments, none of which is persuasive as they do not address the existence of a prior attorney-client relationship between the movant and the attorney sought to be disqualified. Rather, each case assumes the existence of the prior attorney-client relationship, a relationship which the facts of this case show never existed between Eckert Seamans and Dr. VanVoorhies. *See Schloetter v. Railoc of Indiana, Inc.,* 546 F.2d 706 (7th Cir.1976); *Knogo Corp. v. U.S.,* 213 U.S.P.Q. 936 (Ct.Cl.1980); and *Burroughs Wellcome Co. v. Barr Laboratories, Inc.,* 143 F.R.D. 611 (E.D.N.C.1992). *Burroughs Wellcome* expressly finds that "[t]echnical information communicated to. the attorney but not calling for a legal opinion or interpretation and meant primarily for aid in completing patent applications" cannot be protected by the attorney-client privilege. *Id.* at 615. Consistent with *Sun Studs* and *Pain Prevention,* neither can such communications create an attorney-client relationship.

Dr. VanVoorhies submitted a number of exhibits to the Court, some of which were redacted or incomplete, and argued that these exhibits demonstrated that Dr. VanVoorhies communicated confidential information to Eckert Seamans beyond the technical information which is normally passed from an employee-inventor to his employer-assignee's patent counsel. Dr. VanVoorhies further asserted that his exhibits established that Eckert Seamans rendered legal advice to him, basing this assertion upon the issuance of an opinion letter by Eckert Seamans with regard to the inventorship of Application '970. Careful review of the exhibits proffered by Dr. VanVoorhies leads the Court to the conclusion that the communications between Dr. VanVoorhies and Eckert · Seamans were nothing more than the normal communication of technical information to an assignee's attorney primarily to enable the attorney to prepare and prosecute a patent application. The Court further concludes

that Dr. VanVoorhies was obligated to undertake such communications by the terms of the Assignment that he signed.

## IV. CONCLUSIONS

. Dr. VanVoorhies has not shown that Eckert Seamans represented him at any time. None of the usual indicia of an attorney-client relationship are present in this case. Moreover, Dr. VanVoorhies has not provided evidence that his communication of information to Eckert Seamans was anything more than the normal technical information from an employee-inventor to counsel for his employer-assignee, for the purpose of preparing and prosecuting a patent application. In addition to the above factors, the Court may consider the equities weighing for and against disqualification. In *Sun Studs,* the court held that the equities weighed against disqualification, in part due to the firm's representation of Sun Studs for 14 years. *Sun· Studs,* 772 F.2d at 1569. Eckert Seamans has represented WVU for a similar period of time, and WVU should not be deprived of its choice of counsel based upon the facts presented to the Court. Dr. VanVoorhies has simply failed to meet the heavy burden imposed upon a motion to disqualify plaintiff's counsel. The Court, therefore,

**ORDERS**

1. That the defendant's motion to disqualify plaintiff's counsel (Document # 27) be **DENIED.**

---

lie's with regard to its policies concerning employment discrimination, and was now suing its former client, alleging claims of age discrimination. *Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435 (9th Cir.1983) and *Herbert v. Haytaian,* 292 N.J.Super. 426, 678 A.2d 1183 (N.J.Super.Ct.App.Div.1996) are also employment cases. None of these cases assists the Court in analyzing whether the interaction between Eckert Seamans and Dr. VanVoorhies went beyond the normal exchange of technical information from an employee-inventor to his employer-assignee's patent counsel.