UNIVERSITY OF WEST VIRGINIA,
BOARD OF TRUSTEES,
Plaintiff–Appellee,

and

West Virginia University Research
Corporation, Third Party
Defendant–Appellee,

and

James Earl Smith and Integral
Concepts, Inc., Third Party
Defendants–Appellees,

v.

Kurt L. VANVOORHIES,
Defendant/Third Party
Plaintiff–Appellant.

Nos. 00–1440, 00–1478.

United States Court of Appeals,
Federal Circuit.

DECIDED: Jan. 30, 2002.

David E. Tungate, Eckert Seamans Cherin & Mellott, of Pittsburgh, PA, argued for plaintiff-appellee and third party defendant-appellee. With him on the brief were Arnold B. Silverman, and Kirk D. Houser. Of counsel on the brief were Andrew G. Fusco, and Jeffrey A. Ray, The Fusco Legal Group, L.C., of Morgantown, WV.

Gordon H. Copland, Steptoe & Johnson, PLLC, of Clarksburg, WV, argued for third party defendants-appellees. With him on the brief was Megan D. Dortenzo.

Kenneth A. Martin, Martin & Adams, of Washington, DC, argued for defendant/third party plaintiff-appellant. With him on the brief was Jennifer C. Adams. Of counsel on the brief was William A. Kolibash, Phillips, Gardill, Kaiser & Altmayer, of Wheeling, WV.

Before LOURIE, RADER, and GAJARSA, Circuit Judges.

LOURIE, Circuit Judge.

Kurt L. VanVoorhies appeals from the decision of the United States District Court for the Northern District of West Virginia granting the University of West

Virginia Board of Trustees' ("WVU's") motion for summary judgment that VanVoorhies breached his duty to assign U.S. Patent Applications 08/486,340 and 08/514,609 to WVU. *Univ. of W. Va. v. VanVoorhies,* 84 F.Supp.2d 759 (N.D.W.Va.2000). He also appeals from the court's grant of WVU's motions for summary judgment on his claims based on fraud, breach of fiduciary duty, breach of contract, and invalid assignment, as well as its grant of WVU's motions to dismiss his quasi-contract claims and his claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (2000) ("RICO"). In addition, VanVoorhies appeals from the court's denial of his motions to disqualify WVU's counsel, compel discovery, and vacate the stay of a consolidated case. Because we decide that the district court did not err in concluding that VanVoorhies was obligated to assign his inventions to WVU, and we are not persuaded that it erred in any of its other challenged decisions, we affirm.

## BACKGROUND

Dr. VanVoorhies was a Senior Design Engineer for General Motors Corporation before he enrolled in graduate school at WVU in 1990 to pursue a Ph.D. in engineering. *VanVoorhies,* 84 F.Supp.2d at 762. He went to WVU specifically to work with one particular professor, Dr. James E. Smith, after which Smith and VanVoorhies investigated antennae for wireless power transmission. *Id.* VanVoorhies' laboratory notebook indicates that he completed an invention for a contrawound toroidal helical antenna ("the first invention") by June 3, 1991. *Id.*

In November 1991, VanVoorhies submitted an invention disclosure form to WVU describing that invention and listing Smith as a co-inventor. *Id.* at 763. Smith later testified that he had discussed WVU's pat-

ent policy with him prior to submitting that invention disclosure, in June 1991. The WVU policy applies to "University personnel," who are defined as "all full-time and part-time members of the faculty and staff, and all other employees of the University including graduate and undergraduate students and fellows of the University." *Id.* at 762. Under the policy, "[t]he University owns worldwide right, title and interest in any invention made at least in part by University personnel, or with substantial use of University resources, and unless otherwise agreed, this Policy applies to any invention conceived or first reduced to practice under terms of contracts, grants or other agreements." The policy also states that "[t]he inventor shall cooperate fully with the University in all respects; to the evaluation of an invention, the preparation of the filing and prosecution of an application and the transfer of rights in the same as well as the maintenance and protection of any resultant patents." *Id.* at 762 n. 27. The policy compensates inventors with thirty percent of the net royalty income received after subtracting expenses incurred from the procuring and licensing of the patent rights. *Id.* at 763.

In November 1992, VanVoorhies and Smith as co-inventors executed a patent application directed to the first invention. *Id.* at 764. On February 5, 1993, they assigned all rights to that first invention, embodied in U.S. Patent Application 07/992,970, to WVU. *Id.* The '970 application subsequently issued as U.S. Patent 5,442,369 on August 15, 1995. The written assignment ("'970 assignment") extended as well to all continuation-in-part ("CIP") applications relating to the invention, as follows:

[T]he undersigned does (do) hereby sell, assign, transfer and set over unto said assignee, its successors and assigns,

the entire right, title and interest in and to said invention or inventions, as described in the aforesaid application, in any form or embodiment thereof, and in and to the aforesaid application; ... also the entire right, title and interest in and to any and all patents or reissues or extensions thereof to be obtained in this or any foreign country upon said invention or inventions and any divisional, continuation, *continuation-in-part* or substitute applications which may be filed upon said invention or inventions in this or any foreign country; and the undersigned hereby authorize(s) and request(s) the issuing authority to issue any and all patents on said application or applications to said assignee or its successors and assigns.

*Id.* at 764 n. 35 (emphasis added).

On December 29, 1993, VanVoorhies completed his dissertation and received his doctoral degree from WVU. *Id.* at 765. VanVoorhies asserts that he then invented a half-wave bifilar contrawound toroidal helical antenna ("the second invention") during the short interval between receiving his Ph.D. and beginning his work as a Post Graduate Research Assistant Professor at WVU on February 1, 1994. *Id.* In a letter dated October 6, 1994, VanVoorhies, who became a registered patent agent that same month, suggested that WVU file a CIP of the '970 application directed to the second invention. *Id.* at 766. VanVoorhies later forwarded a preliminary invention disclosure to WVU's patent counsel on January 9, 1995, urging WVU to obtain patent protection on the invention. *Id.* at 766. However, when WVU sent VanVoorhies a patent application with a declaration and corresponding assignment, VanVoorhies did not respond. *Id.* WVU nonetheless filed what became U.S. Patent Application 08/486,340 as a CIP of the '970 application on June 7, 1995, listing VanVoorhies as the sole inventor. *Id.* The application was filed under 37 C.F.R. § 1.47(b), which permits a party with a sufficient interest in an invention to file a patent application when an inventor refuses to execute the application. *Id.* at 766–67. The United States Patent and Trademark Office ("PTO") subsequently accepted the '340 application after evaluating WVU's entitlement to ownership of the application under the '970 assignment covering CIPs. *Id.* at 767. The '340 application issued as U.S. Patent 6,028,558 on February 22, 2000. A continuation of that application issued as U.S. Patent 6,204,821 on March 20, 2001.

On August 14, 1995, VanVoorhies filed U.S. Patent Application No. 08/514,609, also directed to the second invention, listing himself as the sole inventor. *Id.*[1] The '609 application, unlike the '340 application, was not designated as a CIP of the original '970 application. He assigned all interest in that application to VorteKx, P.C., of which he is the president and majority shareholder. *Id.* The '609 application issued as U.S. Patent 5,734,353 on March 31, 1998. U.S. Patent 5,952,978 also issued from a continuation of the '609 application on September 14, 1999.

In June 1992, before the '970 application was filed, Smith incorporated Integral Concepts, Inc. ("ICI"), a consulting business wholly owned by Smith. *Id.* at 763. Smith's company obtained an exclusive license to the first invention from the licensing division of WVU, West Virginia Uni-

---

1. VanVoorhies also filed U.S. Patent Application 08/514,610 on August 14, 1995, to provoke an interference with the '970 application. *VanVoorhies,* 84 F.Supp.2d at 767. The district court held that he breached his duty to assign the '610 application to WVU, *id.* at 774, and he does not appeal that portion of the decision.

versity Research Corporation ("WVURC"), on April 12, 1994. *Id.* at 765.

WVU sued VanVoorhies on August 14, 1997, alleging that VanVoorhies breached his duty to assign the second invention to WVU. *Id.* at 767. VanVoorhies filed extensive counterclaims and a third-party complaint against WVURC, Smith and ICI. *Id.* He also moved to disqualify WVU's counsel, the law firm of Eckert Seamans Cherin & Mellott ("Eckert"), asserting that Eckert had represented VanVoorhies in connection with the prosecution of the '970 application. *Univ. of W. Va. v. VanVoorhies*, 33 F.Supp.2d 519, 520 (N.D.W.Va.1998). The district court denied that motion, determining that "[n]one of the usual indicia of an attorney-client relationship are present in this case." *Id.* at 522.

In his counterclaim, VanVoorhies asserted RICO and implied contract claims against WVU, WVURC, Smith, and ICI, which the district court dismissed on the grounds that: (1) the prime alleged conspirator, WVU, could not formulate the required intent as a government entity for the RICO claim; and (2) the express assignment precluded recovery under any implied contract theory. *Univ. of W. Va. v. VanVoorhies*, No. 97–CV–144 (N.D.W.Va. Mar. 30, 1999). VanVoorhies also moved to compel discovery, which the district court denied as untimely, but it nevertheless permitted VanVoorhies to conduct a four-hour deposition of Smith. *Univ. of W. Va. v. VanVoorhies*, No. 97–CV–144 (N.D.W.Va. Nov. 16, 1999).

VanVoorhies further alleged claims for breach of fiduciary duty, breach of contract, and fraud, and sought a declaration of invalidity of the '970 assignment. The district court granted Smith, ICI, and WVURC's motions for summary judgment on each of those claims. *Univ. of W. Va. v. VanVoorhies*, No. 97–CV–144, slip op. at 5–9 (N.D.W.Va. Dec. 9, 1999) (granting summary judgment on fiduciary duty and contract claims); *Univ. of W. Va. v. VanVoorhies*, 84 F.Supp.2d at 768–71 (granting summary judgment on fraud and invalidity of assignment claims). The court granted WVU's motions for summary judgment on those claims with one exception: it denied summary judgment to WVU as to any contract breaches that might be developed by later discovery in the case. *Univ. of W. Va. v. VanVoorhies*, No. 97–CV–144, slip op. at 8 (N.D.W.Va. Dec. 9, 1999). The court determined that VanVoorhies' contract claims based on WVU's patent policy were only relevant with respect to WVU, the party with whom VanVoorhies had actually contracted. *Id.* As for the breach of fiduciary duty claims, the court rejected VanVoorhies' theory that Smith owed VanVoorhies a fiduciary duty by virtue of their professor-student relationship. *Id.* at 5–7. The court concluded that VanVoorhies' fraud claims were barred by a two-year statute of limitations, *VanVoorhies*, 84 F.Supp.2d at 768, and in any event would have found them insufficient on the merits, *id.* at 769–71. It also applied the doctrine of assignor estoppel and held for WVU on VanVoorhies' claim that the '970 assignment should be declared invalid. *Id.* at 772.

The court also granted WVU's motions for summary judgment that VanVoorhies breached his duty to assign the '340 and '609 applications to WVU, concluding without discussion that the '340 application was a CIP of the '970 application and was therefore subject to the '970 assignment. *Id.* at 773–74. Similarly, the court determined that VanVoorhies was obligated to assign the '609 application because it included the technology underlying the '340 application. *Id.*

The court also issued an order staying a related case, *VorteKx, Inc. v. IAS Commu-*

*nications, Inc.,* Nos. 99–CV–61, 97–CV–144 (N.D.W.Va. Feb. 24, 2000), which had been consolidated with this case from the United States District Court for the District of Oregon. *Vortekx, Inc. v. IAS Communications, Inc.,* 72 F.Supp.2d 638 (N.D.W.Va.1999). In its final judgment, the court ordered VanVoorhies to assign the '340 and '609 applications to WVU, as well as any patents issuing therefrom. *Univ. of W. Va. v. VanVoorhies,* No. 97–CV–144 (N.D.W.Va. May 25, 2000) (final judgment). VanVoorhies appealed to the Fourth Circuit, which transferred the case to this court upon motion by WVU. *Univ. of W. Va. v. VanVoorhies,* No. 00–1352 (4th Cir. June 16, 2000).

## DISCUSSION

A district court's jurisdiction under 28 U.S.C. § 1338

> extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

*Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811, 7 USPQ2d 1109, 1113 (1988). Because we conclude that WVU's right to relief at the district court necessarily depended upon the resolution of a substantial question of patent law, *viz.,* whether the '340 application was a CIP of the '970 application, the district court properly assumed jurisdiction under § 1338. Accordingly, we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

We review a district court's grant of summary judgment *de novo. Vanmoor v. Wal–Mart Stores, Inc.,* 201 F.3d 1363, 1365, 53 USPQ2d 1377, 1378 (Fed.Cir. 2000). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted against a party who has not introduced evidence sufficient to establish the existence of an essential element of that party's case, on which the party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

We review *de novo* the grant of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,* 988 F.2d 1157, 1160, 26 USPQ2d 1038, 1041 (Fed.Cir.1993). Dismissal is proper only if, after drawing all reasonable inferences in the appellant's favor, it is clear that the appellant can prove no set of facts consistent with his claim that would entitle him to relief. *Id.*

This court defers to the judgment of the trial court on matters closely associated with the standard functions of the adjudicative process, as long as that judgment is not an abuse of the trial court's discretion. *United States v. Ziegler Bolt & Parts Co.,* 111 F.3d 878, 882 (Fed.Cir. 1997). Such discretionary matters include motions to disqualify counsel, *Sun Studs, Inc. v. Applied Theory Assocs., Inc.,* 772 F.2d 1557, 1566, 227 USPQ 81, 87–88 (Fed. Cir.1985); orders to stay proceedings, *Landis v. North Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936); and discovery matters, *Strag v. Bd. of Trs., Craven Cmty. Coll.,* 55 F.3d 943, 954 (4th

Cir.1995); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* 265 F.3d 1294, 1307, 60 USPQ2d 1161, 1170 (Fed.Cir. 2001).

We review the court's decision on state law issues under the applicable state law for matters that are not committed to our exclusive jurisdiction by statute. *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1338, 47 USPQ2d 1769, 1783 (Fed.Cir.1998). We therefore apply West Virginia state law to VanVoorhies' claims of fraud, breach of fiduciary duty, and breach of contract. We apply Federal Circuit law to issues pertaining to patent law, *Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1675 (Fed.Cir.1999) (en banc in relevant part), including the determination whether a party's conduct before the PTO qualifies as a predicate racketeering act for RICO, *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.,* 204 F.3d 1368, 1380, 54 USPQ2d 1001, 1009 (Fed. Cir.2000).

On appeal, VanVoorhies raises a whole array of issues. He first argues that the court erred in granting WVU's motion for summary judgment that he breached his duty to assign the '340 and '609 applications to WVU. Specifically, he argues that the '340 application was not properly designated as a CIP of the '970 application because it is directed to an independent and distinct invention, and that it is therefore not subject to the CIP provision of the '970 assignment. He further asserts that the '609 application is not subject to assignment to WVU under the patent policy because he conceived that invention and reduced it to practice while he was not associated with WVU. VanVoorhies also asserts that the court erred in granting WVU summary judgment on his claims for fraud, breach of fiduciary duty, and breach of contract, as well as his claim that the

'970 assignment should be declared invalid. Similarly, he argues that the court erred in dismissing his implied contract and RICO claims. Finally, apparently proceeding on the unsound assumption that the more issues raised, the better the chance for success, he argues that the court abused its discretion in denying his motions to disqualify WVU's counsel for dual representation, compel discovery, and vacate the stay of the consolidated *Vortekx* case.

WVU and the third-party defendants, WVURC, Smith, and ICI, respond that the court properly considered the '340 application to be a CIP of the '970 application and therefore subject to the '970 assignment. They also assert that the '609 application, which is directed to the same subject matter as the '340 application, is subject to assignment to WVU under WVU's patent policy. They further argue that: (1) the court did not err in granting summary judgment on his fraud claims because they are barred under the statute of limitations; (2) VanVoorhies has not shown that the professor-student relationship between Smith and VanVoorhies gave rise to a fiduciary duty on Smith's part; (3) VanVoorhies has not shown any facts to support his breach of contract claim; and (4) assignor estoppel precludes his claim that the '970 assignment is invalid. They also argue that the court properly dismissed his RICO and implied contract claims, and that it did not abuse its discretion in its decisions regarding disqualification of counsel, discovery, and the stay of the *Vortekx* case.

### A. *Assignment*

We first address the question whether VanVoorhies was obligated to assign the '340 application to WVU under the '970 assignment. While questions of contract law are matters of state law, the

issue here depends on the fact question as to whether the '340 application was a CIP of the '970 application. That is a question of patent law, which we interpret according to federal law.

■ The parties do not dispute that there are differences between the first and second inventions. Whereas the first invention of the '970 application is directed to toroidal antennas in which the helical winding is divided into an even number of circumferential segments and wound around two distinct and separate conductors, the second invention of the '340 application has a single conductor with a different arrangement of elements. Those differences, however, do not establish that the application on the second invention is not properly designated as a CIP of the first invention and thus not subject to the '970 assignment of CIPs.

■ A continuation-in-part application is just what its name implies. It partly continues subject matter disclosed in a prior application, but it adds new subject matter not disclosed in the prior application. Thus, some subject matter of a CIP application is necessarily different from the original subject matter. *See, e.g.,* Manual of Patent Examining Procedure § 201.08 (7th ed. Rev. 1 Feb. 2000) ("MPEP") ("A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application ..., repeating some substantial portion or all of the earlier nonprovisional application and *adding matter not disclosed* in the said earlier nonprovisional application.") (citation omitted). The '340 application falls within the MPEP's guidelines for CIPs because it repeats some of the subject matter of the '970 application and adds the use of a single semiconductor and a different arrangement of the elements. The '340 application also has a common inventor with the '970 application, VanVoorhies,

it was filed during the pendency of that application, and it contains a specific reference to the earlier filed application. Moreover, the PTO accepted the '340 application for filing without the signature of the inventor under 37 C.F.R. § 1.47(b) after reviewing WVU's submissions asserting its ownership interest based on the '970 assignment covering CIPs. Finally, and compellingly, VanVoorhies himself, a patent agent with knowledge of patent law, suggested to WVU that the second invention be designated as a CIP, *VanVoorhies,* 84 F.Supp.2d at 765, and his contrary argument now on appeal is not credible. Whether the '340 application is entitled to the priority date of the '970 application for common subject matter, which is the principal reason why one designates an application as a CIP, is a separate question which is not before us. The '340 application did, however, constitute a CIP. We therefore conclude that the district court did not err in determining that the '340 application was properly designated as a CIP of the '970 application. Because the '970 assignment expressly required VanVoorhies to assign all CIPs of the '970 application to WVU, we affirm the court's conclusion that VanVoorhies was required to assign the '340 CIP application to WVU, and that he breached his duty by refusing to do so.

■ We next address the question whether VanVoorhies was obligated to assign to WVU the '609 application, which was not designated as a CIP. The district court determined that he was obligated to make that assignment because the technology underlying the '609 application was the same as that in the '340 CIP application, which he had a duty to assign under the '970 agreement. Although the parties now agree that the '609 and '340 applications are directed to the same subject matter, we do not read the '970 assignment of

"continuation-in-part" applications as necessarily requiring assignment of an application that embodies the same subject matter as a CIP but is not itself designated as a CIP. We will evaluate whether VanVoorhies was obligated to assign the '609 application on a different basis, *viz.*, WVU's patent policy.

VanVoorhies asserts that he was not obligated to assign the '609 application to WVU under its patent policy because the policy was merely an option for him to elect or reject, and moreover that he was not given a copy of the patent policy and was not informed that it applied to him "until before 1994." He also argues that the policy did not apply to him because he invented the subject matter of the '609 application during the short period of time between December 19, 1993, and February 1, 1994, when VanVoorhies was not directly affiliated with WVU as a student or professor.

WVU responds that VanVoorhies admitted that he executed the '970 assignment "with the understanding that in exchange he would enjoy the benefits of the West Virginia University Patent Policy pertaining to this specific invention." WVU also identifies several admissions by VanVoorhies showing that the second invention was invented while VanVoorhies was "University personnel" and thus subject to the patent policy.

We agree with WVU that VanVoorhies was indeed obligated to assign the '609 application under WVU's patent policy. That policy broadly applies to all "University personnel," which includes "all full-time and part-time members of the faculty and staff, and all other employees of the University including graduate and undergraduate students and fellows of the University." *VanVoorhies,* 84 F.Supp.2d at 762. Under the policy, WVU owns all inventions that are made by University personnel or made with substantial use of University resources. The policy states nothing about WVU's ownership interest being subject to the election of University personnel. Thus, any inventions made by VanVoorhies pursuant to his graduate studies rightfully belong to WVU. *See Chou v. Univ. of Chi.,* 254 F.3d 1347, 1357, 59 USPQ2d 1257, 1261 (Fed.Cir.2001) (concluding, under Illinois law, that graduate student was obligated to assign her inventions to the University under its patent policy even absent a signed contract requiring such assignment).

Moreover, VanVoorhies' claim that he was ignorant of the policy's application to him until 1994 is not supported by the evidence of record. Smith testified that he discussed the policy with VanVoorhies in June of 1991. VanVoorhies admitted that he assigned the '970 application to WVU under the policy, and he also assigned an unrelated patent, U.S. Patent 5,361,737, to WVU without objection.

The evidence is also clearly contrary to VanVoorhies' assertion that he was not affiliated with WVU and thus not subject to its patent policy when he conceived his second invention. VanVoorhies presents only a few unwitnessed, unbound log book pages from January of 1994 to support that claim. WVU has identified much more reliable evidence, including statements made by VanVoorhies himself under oath, showing that he conceived the invention while he was still a graduate student. For example, in a declaration in support of a motion early in this litigation, VanVoorhies stated that he "conceived the invention which is the subject of my U.S. Patent Application 08/514,609, during my individual research on my Federally copyrighted dissertation thesis in order to get my degree. Between August 1993 and January 1994, I reduced my conception, a Single Conductor Bifilar Contrawound Toroidal

Helical Antenna, to practice." In addition, VanVoorhies declared in a protest to the PTO concerning the '340 application that "[a]t the time I conceived the instant invention, I was a non-teaching student." As VanVoorhies now concedes that the '340 and '609 applications were directed to the same subject matter, that statement is a further admission that his conception of the invention of the '609 application occurred while he was still affiliated with WVU as "University personnel." While we must view the evidence favorably to VanVoorhies, we conclude that the self-serving, uncorroborated log book entries do not create a genuine issue of material fact to preclude summary judgment in light of the overwhelming evidence and admissions that the invention was conceived while he was a student at the University. We therefore affirm the district court's grant of summary judgment that VanVoorhies breached his obligation to assign the '340 and '609 applications to WVU, and we affirm its order requiring him to execute an assignment of those applications and the issued patents based thereon.

B. *Fraud*

 VanVoorhies asserts fraud in the following alleged scenario: Smith told VanVoorhies that he would be able to influence licensing decisions, VanVoorhies relied on those statements when he executed the '970 assignment, but Smith and WVU in fact secretly intended that WVU would license the invention to ICI. VanVoorhies also asserts that the court erred in finding that the fraud claims were untimely.

WVU argues that the court properly granted summary judgment on the merits because VanVoorhies did not present any evidence that he was promised that he could influence licensing decisions, and

that the written assignment of his rights contradicts that assertion. WVU also argues that the fraud claims were barred under the applicable two-year statute of limitations.

 We agree with WVU that the district court did not err in its determination that VanVoorhies' fraud claims fail on the merits as a matter of law. Under West Virginia law, a claim for fraud may be established by proof that the defendant made a fraudulent statement, that it was material and false, and that the plaintiff justifiably relied on it and was thereby damaged. *Hervey v. Crouch*, 97 W.Va. 161, 124 S.E. 497, 498 (1924). VanVoorhies has presented no evidence that the allegedly inducing statements were ever made, and indeed such evidence would contradict the written assignment of his entire rights in the invention and the patent policy that broadly gives discretion to WVU in licensing decisions. VanVoorhies had no right to influence licensing decisions regarding the applications he was obligated to assign to WVU. Because no reasonable fact-finder could decide for VanVoorhies on his fraud claim on the merits, we affirm the district court's grant of WVU's motion for summary judgment.

C. *Fiduciary Duty*

VanVoorhies argues that Smith and VanVoorhies had a relationship of trust concerning their inventions, and that Smith breached that trust by inducing VanVoorhies to list Smith as a co-inventor of the '970 application so that Smith could share in the revenues. He argues that WVU breached its fiduciary duty to him as his employer by misappropriating his invention rights. Smith responds that there is no fiduciary relationship between a professor and a student. WVU responds that the relationship between WVU and VanVoorhies concerning patent rights is fully

set forth in the patent policy and the '970 assignment, and that nothing in those agreements indicates that WVU owed VanVoorhies any fiduciary duty.

We recently addressed a similar claim regarding the existence of a fiduciary duty between a professor and a student in *Chou,* 254 F.3d 1347, 59 USPQ2d 1257. In that case, Chou, a graduate student, alleged that her mentor-professor specifically told her that he would take care to properly protect her research and inventions, that she trusted him to do so, and that he breached the resulting fiduciary trust relationship by misappropriating her inventions for himself without her knowledge. *Id.* at 1362, 59 USPQ2d at 1265. The district court dismissed her allegations for failing to state a claim. *Id.* at 1363, 59 USPQ2d at 1265. We reversed. Assuming the truth of her allegations, as we were obligated to at that stage of the proceedings, we determined that Chou had adequately pleaded the existence of special circumstances of trust between herself and her professor under Illinois law, as well as a breach of that trust by her professor. *Id.* We also held that she had stated a claim against the University for breach of fiduciary duty under the theory of *respondeat superior. Id.*

In this case, the district court granted WVU, WVURC, ICI, and Smith's motions for summary judgment on VanVoorhies' breach of fiduciary duty claims because VanVoorhies had not cited any authority that a fiduciary duty existed between Smith and VanVoorhies. *Univ. of W. Va. v. VanVoorhies,* No. 1:97–CV–144, slip op. at 5–7 (N.D.W.Va. Dec. 9, 1999) (order). Although we concluded in *Chou* that Chou had sufficiently stated a claim for purposes of Illinois fiduciary duty law, we conclude in this case, which is at a further stage in the litigation, that VanVoorhies has not shown a genuine issue of material fact to support his fiduciary duty claim under West Virginia law.

■■■■■ A fiduciary duty arises when a person assumes a duty to act for another's benefit, while subordinating his or her own personal interest to that other person. *Elmore v. State Farm Mut. Auto. Ins. Co.,* 202 W.Va. 430, 504 S.E.2d 893, 898 (1998). Even if, viewing the evidence favorably to VanVoorhies, we were to conclude that such a relationship of trust existed between VanVoorhies and Smith—a determination that we do not make—VanVoorhies did not present any evidence that Smith breached that trust by inducing VanVoorhies to list Smith as a co-inventor of the first invention. VanVoorhies was at all times aware of the patenting and inventorship decisions being made regarding the first invention, and he participated in and acceded in those decisions by jointly signing the '970 application and assignment with Smith, whom he knew would be entitled to a share of the proceeds under the patent policy. *VanVoorhies,* 84 F.Supp.2d at 763. We therefore conclude that his breach of fiduciary claim against Smith was properly resolved by summary judgment, because VanVoorhies has not introduced sufficient evidence to establish an essential element of his claim, *viz.,* a breach of the purported fiduciary duty, on which he would bear the burden of proof at trial.

■■■ Similarly, his fiduciary duty claim against WVU must fail. WVU cannot be liable under the theory of *respondeat superior* if the claims against Smith are insufficient as a matter of law, and we agree with WVU that the relationship between WVU and VanVoorhies as set forth in the assignment and patent policy does not establish any fiduciary duty on WVU's part. We therefore affirm the court's grant of summary judgment on VanVoorhies' breach of fiduciary duty claims.

## D. *Contract*

VanVoorhies argues in the alternative that, even if WVU's patent policy does apply to him, WVU breached that portion of the policy entitling inventors to receive thirty percent of royalties. He asserts his entitlement to thirty percent of $12 million in alleged revenue. WVU responds that VanVoorhies' contract claims on appeal are different from those he asserted before the district court, and that in any event WVU has not received net royalties.

VanVoorhies' contract claims, in their current form, are not properly before this court. The district court granted summary judgment to WVU on VanVoorhies' contract claims relating to WVU's alleged duty to file foreign patent applications for VanVoorhies' inventions, but denied summary judgment as to other contract claims that might be developed during discovery. *Univ. of W. Va. v. VanVoorhies,* No. 1:97–CV–144, slip op. at 8 (N.D.W.Va. Dec. 9, 1999) (order). Subsequently, VanVoorhies agreed to dismiss without prejudice any remaining claim for damages under claim nine of his amended counterclaim, *Univ. of W. Va. v. VanVoorhies,* No. 1:97–CV–144, slip op. at 2 (N.D.W.Va. Jan. 12, 2000) (order), which is his breach of contract claim. That claim includes an assertion that WVU breached the patent policy by not filing foreign counterparts of the '970 application and by compensating Smith, but not VanVoorhies, under the '970 assignment. He therefore may not present those claims to this court on appeal.

## E. *Invalidity of Assignment*

VanVoorhies argues that if he prevails on his fraud and breach of contract claims, the '970 assignment should be declared invalid. He also argues that WVU and Smith's inequitable conduct in the PTO provide an independent basis for declaring that assignment invalid. WVU responds that the district court properly granted summary judgment on this issue because assignor estoppel bars VanVoorhies' challenge to the assignment's validity.

WVU misconstrues the doctrine of assignor estoppel, which is an equitable doctrine designed to prevent the injustice that would be suffered by an assignee if an assignor who assigned a patent later devalues it by raising defenses of patent invalidity. *See Diamond Scientific Co. v. Ambico, Inc.,* 848 F.2d 1220, 1225, 6 USPQ2d 2028, 2031 (Fed.Cir.1988). While the doctrine precludes challenges to the validity of a patent itself, *see, e.g., id.,* it does not preclude challenges to the validity of a contract assigning the patent. Estopping an assignor from challenging the patent it has assigned is based on the evident unfairness of one receiving compensation for the transfer of an asset and then asserting that the asset has no value. There is no corresponding unfairness in a challenge to the validity of a contract. VanVoorhies in fact does not repudiate the value of what he assigned to WVU and thereby violate fair-dealing principles. On the contrary, he asserts that the patents are indeed valuable and that WVU has forfeited any rights to them because of false statements that WVU and Smith allegedly made to the PTO.

Although we agree with VanVoorhies that assignor estoppel does not preclude a challenge to the validity of the assignment, we conclude that VanVoorhies has failed to present a plausible legal basis for such a challenge. VanVoorhies principally asserts that "he may avoid the assignment, or be excused from performing thereunder" if he prevails on his fraud and breach of contract claims. He has not so prevailed. Furthermore, to the extent that inequitable conduct in the PTO were

proved, it would only preclude enforcement of the patent, but would not affect WVU's right to the patent as against VanVoorhies. Moreover, because a determination of inequitable conduct would result in the patent being unenforceable, that result is inconsistent with VanVoorhies' claim that he is entitled to ownership of an enforceable patent. *See Stark v. Advanced Magnetics, Inc.,* 119 F.3d 1551, 1556, 43 USPQ2d 1321, 1325 (Fed.Cir. 1997) (concluding that an "innocent" inventor may not enforce a patent that has been tainted by inequitable conduct). We therefore affirm the court's grant of summary judgment in favor of WVU on VanVoorhies' claim that the assignment should be declared invalid.

### F. *Implied-in-law, Quasi Contract, and Unjust Enrichment Claims*

VanVoorhies asserts that the court erred in dismissing his claims based on implied-in-law contract, quasi-contract, and unjust enrichment. He argues that those claims are not precluded by the existence of an express contract because Fed. R.Civ.P. 8 allows him to plead his claims in the alternative.

██ We agree with WVU that those claims were properly dismissed because such claims may not be brought when there is an express contract governing the same subject matter. *See Bright v. QSP, Inc.,* 20 F.3d 1300, 1306 (4th Cir.1994) ("It is a well-rooted principle of contract law that 'an express contract and an implied contract, relating to the same subject matter, cannot co-exist.' ") (applying West Vir-

ginia law). VanVoorhies pleaded his tenth claim for relief, his alternative claim for breach of implied-in-law contract, quasi-contract, and/or unjust enrichment, as follows: "No requirement exists [sic] to assign inventions, patent applications, or patents exists or is enforceable between the parties. However, in the alternative, to the extent such [sic] the court finds that such a requirement or duty exists and is enforceable, Plaintiff and Third Party Defendant's [sic] must be held in law to an implied in law contract, or quasi-contract, which they materially breached." As is clear, VanVoorhies did not plead in the alternative by arguing that an implied contract should govern because there is no relevant express contract. Rather, we understand VanVoorhies to have asserted that we should imply a contract to restore him to the position he would have been in absent the express agreement, if we determine that any express agreement is enforceable. VanVoorhies thus requested the court to imply an agreement in the face of an express agreement covering the same subject matter, which is legally unsound. *See Bright,* 20 F.3d at 1306. We therefore affirm the court's dismissal of his implied-in-law, quasi-contract, and unjust enrichment claims.

### G. *RICO*

VanVoorhies argues that the district court erred in dismissing his RICO claim under 18 U.S.C. § 1962(c)[2] and his claim for conspiracy to violate the RICO act under 18 U.S.C. § 1962(d)[3] because it improperly identified WVU as the "prime

---

**2.** "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (2000).

**3.** "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d) (2000).

conspirator," and that, in any event, RICO may be asserted against Smith.

WVU responds that any *mens rea* Van-Voorhies may be able to establish on Smith's part may not be imputed to WVU through the doctrine of *respondeat superior* because it is a government entity. Smith responds that the RICO requirement that "two or more" persons commit predicate acts of racketeering cannot be satisfied because WVU as a government entity does not qualify as a co-conspirator and Smith cannot be a co-conspirator with his wholly-owned company, ICI.

■ We affirm the district court's dismissal of VanVoorhies' RICO claims, but on a different basis from that of the district court. VanVoorhies asserted, as the specific predicate acts for his RICO claims, that WVU and Smith committed mail fraud by making false submissions to the PTO in prosecuting the '970 and '340 applications.[4] However, we recently held in *Semiconductor Energy Laboratory Co. v. Samsung Electronics Co.*, 204 F.3d at 1380, 54 USPQ2d at 1009, that "inequitable conduct before the PTO cannot qualify as an act of mail fraud or wire fraud for purposes of the predicate act requirement." In that case, Samsung alleged that it was the indirect but intended victim of a scheme of inequitable conduct in the PTO. We rejected that argument, concluding that the PTO had not been defrauded of something of value, as is required by the mail fraud statute under 18 U.S.C. § 1341,[5] because a patent application is not

government property. *Id.* VanVoorhies' allegations that he was victimized by WVU and Smith's inequitable conduct before the PTO, even if true, therefore do not adequately state a predicate racketeering act under RICO. His claim that there was a RICO conspiracy under 18 U.S.C. § 1962(d) must also fail because he did not sufficiently allege any substantive RICO offense. We therefore affirm the court's dismissal of his RICO claims.

### H. *Disqualification of Counsel*

■ VanVoorhies argues that the court abused its discretion in dismissing his motion to disqualify WVU's counsel, Arnold Silverman and the Eckert firm, because of their alleged representation of VanVoorhies in prosecuting the '970 application in his name. He asserts that he made confidential disclosures to Silverman for the purpose of obtaining legal advice in prosecuting the '970 patent application, and that Silverman and the Eckert firm should therefore be prohibited from representing WVU in substantially the same matter, citing this court's decision in *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 53 USPQ2d 1747 (Fed.Cir.2000).

WVU responds that the mere act of prosecuting a patent application in the name of the inventor, as required under 35 U.S.C. § 111, does not establish an attorney-client relationship. WVU also argues that VanVoorhies' disclosures were made pursuant to his obligations under the '970

---

4. VanVoorhies also generally asserted that WVU and Smith engaged in wire fraud under 18 U.S.C. § 1343 (2000), but did not identify any specific act of such fraud. Those general fraud assertions fail to meet the requirement that fraud be pleaded with particularity under Fed.R.Civ.P. 9(b). *See, e.g., VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 701–02 (6th Cir.2000) (affirming dismissal of RICO claims based on predicate acts of mail

and wire fraud because plaintiffs failed to state the elements of fraud); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658–59 (3d Cir.1998) (same).

5. 18 U.S.C. § 1341 (2000) makes it illegal to use U.S. mail for "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses...."

assignment, and that VanVoorhies did not seek legal advice in his communications.

We agree with WVU that the court did not abuse its discretion in dismissing Van-Voorhies' motion to disqualify WVU's counsel. VanVoorhies was required under the '970 assignment to provide technical information and execute necessary documents for prosecution of the patent application. The Eckert firm was thus representing WVU when it dealt with VanVoorhies. It prosecuted the application in his (and Smith's) name, as required by law. That act did not give rise to an attorney-client relationship between WVU's counsel and VanVoorhies and thus require disqualification when WVU and VanVoorhies became adverse parties. *See Sun Studs*, 772 F.2d 1557, 1568, 227 USPQ 81, 89 (Fed.Cir.1985) ("Where the former relationship between the inventor and the patent counsel was solely technical in nature, and where the patent counsel in the former relationship was chosen by and at all times was working on behalf of the company rather than the inventor, it should not serve as an automatic disqualification that the defendant is the inventor or a company with which he is associated."). Rather, the assignee may choose its counsel for prosecution of the applications that it owns, and, "[s]hould the company later find it necessary to sue on the patent, it is to be expected that the company would choose its regular patent counsel...." *Id.* Moreover, it was the corporation-counsel relationship that was the basis for the attorney-client privilege in *In re Spalding Sports*, not the inventor-counsel relationship. 203 F.3d at 805, 53 USPQ2d at 1751 (holding that Spalding could assert an attorney-client privilege for an invention disclosure to its corporate legal department for the purpose of obtaining legal advice for the corporation). The attorney-client privilege does not attach absent an attorney-client rela-tionship, which VanVoorhies has not demonstrated. Finally, we note that VanVoorhies' own statements to an attorney at Eckert belie his arguments concerning the existence of an attorney-client relationship: "I realize that I am not your client, and that it is not your duty to look out for my rights." We therefore conclude that the district court did not abuse its discretion in dismissing VanVoorhies' disqualification motion.

## I. *Discovery Issues*

VanVoorhies also argues that the court abused its discretion in, *inter alia*, limiting VanVoorhies to a four-hour deposition of Smith in which the court substantially participated. We agree with WVU that the court did not err in denying VanVoorhies' motion to compel discovery because he untimely noticed depositions of witnesses known to him before the litigation. "[D]istrict courts have great discretion over the discovery process and over the mechanics of the trial process." *Strag*, 55 F.3d at 954. We decline to interfere with a court's management of the discovery process absent a showing of a clear abuse of discretion or extreme prejudice. *Id.; Advanced Cardiovascular*, 265 F.3d at 1307, 60 USPQ2d at 1170. VanVoorhies has not made such a showing on appeal. Moreover, the court did allow VanVoorhies to conduct a four-hour deposition of Smith despite VanVoorhies' discovery missteps. Because VanVoorhies has not presented any basis for us to conclude that the court abused its discretion in denying his motion to compel discovery, we affirm that decision.

## J. *Stay of VorteKx, Inc. v. IAS Communications, Inc.*

Finally, VanVoorhies argues that the court abused its discretion in staying *VorteKx, Inc. v. IAS Communications, Inc.*, Nos. 99 CV 61, 97 CV 144 (N.D.W.Va. Feb. 24, 2000), which had been consolidat-

ed with this case from the United States District Court for the District of Oregon. He asserts that the stay prejudiced VorteKx's interest in the '609 and '353 applications because it could not participate in the action in West Virginia. We agree with WVU and Smith that VanVoorhies does not have standing to assert VorteKx's interest in the present appeal. We therefore affirm the stay.

■■■ We have considered the parties' remaining arguments and conclude that they are without merit. We further observe that, while we have considered all of VanVoorhies' arguments on the merits, appellants serve their interests best by focusing their appeals only on their most meritorious arguments rather than raising all of the issues on which they disagree with the district court, including discovery and stay issues, for which they can proffer only weak arguments and for which there is a very deferential standard of review.

## CONCLUSION

Because VanVoorhies breached his duty to assign the '340 and '609 applications to WVU, we affirm the district court's grant of summary judgment and its final order directing VanVoorhies to fulfill his various obligations, including assignment of those applications and the patents based thereon. We also affirm the court's grant of summary judgment on VanVoorhies' claims of fraud, breach of fiduciary duty, breach of contract, and invalid assignment, as well as its grant of WVU's motions to dismiss the quasi-contract and RICO claims. Finally, we conclude that the court did not abuse its discretion in its decisions on attorney disqualification, discovery, and the stay of the consolidated *Vortekx* case. We therefore

*AFFIRM.*